Nos. 2023-1583, 2023-1584, 2023-1591, 2023-1592

# United States Court of Appeals
# for the Federal Circuit

WIRELESS DISCOVERY LLC,

*Plaintiff-Appellant*,

v.

COFFEE MEETS BAGEL, INC., DOWN APP, INC.,
GRINDR, INC., HILY CORP.,

*Defendants-Appellees.*

Appeal from the United States District Court for the District of Delaware in Case
Nos. 22-478-GBW, 22-479-GBW, 22-481, and 22-482-GBW, Judge Gregory B.
Williams

## APPELLEES' RESPONSE BRIEF

Lance Wyatt
Neil J. McNabnay
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
wyatt@fr.com
mcnabnay@fr.com

*Attorneys for Defendants-Appellees*

## PATENT CLAIMS AT ISSUE
## FED. CIR. R. 28(a)(12)

This appeal concerns claims 1-20 of U.S. Patent No. 9,264,875 ("the '875 Patent"), claims 1-32 of U.S. Patent No. 9,357,352 ("the '352 Patent"), claims 1-18 of U.S. Patent No. 10,321,267 ("the '267 Patent"), and claims 1-15 of U.S. Patent No. 10,334,397 ("the '397 Patent") (collectively, "the Asserted Patents"). The district court treated Claim 10 of the '267 Patent as representative of all claims of the Asserted Patents for patent-eligibility analysis under 35 U.S.C. § 101.

Claim 10 of the '267 Patent recites:

10. A method comprising:

using a computing device to communicate with various mobile and terminal devices to manage introduction and connection of members belonging to a same network by sharing personal attributes between members;

communicatively linking a first mobile communications device to said computing device; communicatively linking a second mobile communications device to said computing device;
using said computing device to provide access to stored user profile information about a first user and a second user;

using said computing device to store static locations of members and receive information identifying current dynamic locations of all members in said network;

using said computing device to calculate and determine a proximity of user locations;

using said computing device to send to said first user upon inquiring of other members in said network of said first user, personal attributes of all other members based on proximity calculations to select members that said first user may wish to connect with, and to send to said second mobile communication

device an invitation on behalf of said first user for said second user to accept connecting with said first user;

using said computing device to communicatively connect said first user and said second user;

using said computing device to locate information about said second user from a social network storage file of said second user, and transmit this information to said first mobile communications device, wherein the first user and the second user are members of a same social network, and the computing device is to disclose non-anonymous social network attributes including a picture, name, and location of the first user and the second user in a vicinity or within a predetermined distance from one another for the purpose of connecting members of the same social network based in part on proximity calculations between connecting members;

using said computing device to permit discoverable members to have their respective devices turned on or turned off at a time of a search being conducted by said first user; and

using said computing device to permit said discoverable members to have their respective devices unconnected to an internet connection service at said time of the search being conducted by said first user,

wherein any of turned off devices and disconnected devices is discoverable by said computer device as said internet connection service is configured to report said any of turned off devices and disconnected devices as discoverable based on a latest static and dynamic location in proximity to said first user.

# CERTIFICATE OF INTEREST

Counsel for Appellees Coffee Meets Bagel, Inc., Down App, Inc., Grindr, Inc., and Hily Corp. certify the following:

1.      The full name of every entity represented in the case by the counsel filing the certificate: Coffee Meets Bagel, Inc., Down App, Inc., Grindr, Inc., and Hily Corp.

2.      For each entity, the name of every real party in interest, if that entity is not the real party in interest: None/Not Applicable.

3.      For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock:

Risovel Limited, Grindr Capital LLC,

4.      The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and:

(A) appeared for the entity in the lower tribunal: Fish & Richardson P.C., Philip G. Brown, Jeremy D. Anderson; Noel F. Chakkalakal

(B) are expected to appear for the entity in this court: None/Not Applicable.

5.      Related cases pending in this tribunal that will directly affect or be directly affected by this court's decision in the pending cases:

*Wireless Discovery LLC v. The Meet Group, Inc.*, No. 2023-1582
*Wireless Discovery LLC v. eHarmony, Inc.*, No. 2023-1586

6.     All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases: None/Not Applicable.

Dated: August 11, 2023            */s/ Lance Wyatt*
                                     Lance Wyatt

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF THE ISSUES..........................................................1

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF THE CASE...............................................................2

    I.     The Parties ...........................................................................2

    II.    The Asserted Patents ..........................................................3

    III.   Procedural History ..............................................................4

SUMMARY OF THE ARGUMENT ......................................................8

ARGUMENT .......................................................................................9

    I.     Standard of Review .............................................................9

    II.    The Law of Subject Matter Eligibility .................................9

    III.   The Asserted Patents Are Ineligible Under 35 U.S.C. § 101..............11

    IV.   Claim 10 of the '267 Patent is representative. ....................................11

    V.    *Alice* Step One: The claims are directed to an abstract idea. ..............15

          1.    Claim 10 of the '267 Patent is directed to the abstract idea of social networking. ........................................................15

          2.    Claim 10 of the '267 Patent does not improve computer functionality. ..............................................................19

          3.    Claim 10 of the '267 Patent recites the abstract idea functionally. ..............................................................28

    VI.   *Alice* Step Two: The claims do not contain an inventive concept...............................................................31

VII.  Nothing precluded the district court from assessing eligibility of the Asserted Patents at the Rule 12(b)(6) stage. ..................................37

VIII.  Conclusion and Relief Sought.............................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ........................................................9, 38

*Alice Corporation Pty. Ltd. v. CLS Bank International*,
  573 U.S. 208 (2014) ..................................................................*passim*

*Ancora Techs. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) .......................................................7, 8

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
  915 F.3d 743 (Fed. Cir. 2019) ...............................................................9

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) .......................................24, 25, 26, 27

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .................................................9, 37, 38

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ............................................................................10

*BSG Tech LLC v. BuySeasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) .........................................................35

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) .........................................................32

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ...........................................................23

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ....................................................32, 37

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018) .........................................................29

*Cosmokey Solutions GMBH & Co. KG v. Duo Security LLC*,
  15 F.4th 1091 (Fed. Cir. 2021) .........................................................21

*Cronos Techs., LLC v. Expedia Inc.*,
No. 1:13-cv-01538, -1541, -1544, D.I. 126 (D. Del. Sept. 8, 2015) .................14

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) ...........................................................31

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ............................................................29

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980)........................................................................10

*Eagle View Techs., Inc. v. Xactware Solutions, Inc.*,
No. 1:15-cv-07025, D.I. 104 (D.N.J. Aug. 2, 2016).........................................14

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ......................................................29, 34

*Electronic Communication Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020) ...........................................................22

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ...........................................................19

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021) ...........................................................28

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ...........................................................13

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) ...........................................................37

*Gottschalk v. Benson*,
409 U.S. 63 (1972)...........................................................................10

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ...........................................................20

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) ...........................................................36

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ..........................................................32

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
  No. 16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017) .......................18

*Le Roy v. Tatham*,
  55 U.S. 156 (1852) ........................................................................10

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
  566 U.S. 66 (2012) ........................................................................31

*MAZ Encryption Technologies LLC v. Blackberry Corporation*,
  No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) .......................23

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ..........................................................7

*NetSoc, LLC v. Match Grp., LLC*,
  838 F. App'x 544 (Fed. Cir. 2020) .................................................17, 18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ..........................................................37

*Perry St. Software, Inc. v. Jedi Techs., Inc.*,
  548 F. Supp. 3d 418,433 (S.D.N.Y. 2021) .............................................18

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ...........................................................37

*Pragmatus Telecom LLC v. Interactive Intelligence, Inc.*,
  No. 1:14-cv-00026, D.I. 84 (D. Del. July 9, 2015) ...................................14

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
  696 F. App'x 1014 (Fed. Cir. 2017) .....................................................22

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017) ..........................................................29

*Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*,
  No. 2022-1468, 2023 WL 193162 (Fed. Cir. Jan. 17, 2023) ........................22

*Sage Prods. Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) ........................................................13

*SAP America, Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ........................................................28

*Simio, LLC v. Flexsim Software Prods.*,
  983 F.3d 1353 (Fed. Cir. 2020) ........................................................37

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ..........................................................32

*TriPlay Inc. v. WhatsApp Inc.*,
  No. 1:13-cv-01703, D.I. 52 (D. Del. Apr. 28, 2015) .........................14

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ........................................................28

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ...................................................21, 22

*Vallies v. Sky Bank*,
  432 F.3d 493 (3d Cir. 2006) ...............................................................9

*Walker Digit., LLC v. Google, Inc.*,
  66 F. Supp. 3d 501 (D. Del. 2014)....................................................18

*Wireless Discovery LLC v. eHarmony, Inc.*,
  No. 1:22-cv-00480, Dkt. No. 54 (D. Del. Feb. 6, 2023)..............11, 23

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113, 212 L. Ed. 2d 10
  (2022) .................................................................................................34

**Statutes**

35 U.S.C. § 101 ................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12 ....................................................................5, 37, 38

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellees affirm that the Statement of Related Cases and the Jurisdictional Statement in Wireless Discovery's brief are correct.

## STATEMENT OF THE ISSUES

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The district court found that the claims of the Asserted Patents are directed to the abstract idea of social networking, such as matching people by their location, and do not include an inventive concept beyond that idea. Did the lower court therefore properly determine that the claims of the Asserted Patents do not claim eligible subject matter under 35 U.S.C. § 101?

## PRELIMINARY STATEMENT

Exchanging information about people based on their location and membership in an organization is an abstract idea ineligible for patenting. The application of this idea using a framework of generic computer components adds nothing to raise it above the realm of the abstract.

Wireless Discovery's brief raises no difficult questions regarding subject matter eligibility. Its argument on appeal reduces to its contention that, prior to the purported conception of the asserted claims, "there were no mobile dating applications or social networking applications, at least as we now know them." *See* Blue Br. at 2-3. That is,

Wireless Discovery argues that, because its claims allow for "authenticated, cross-hardware, cross-software, cross-wireless-network, dynamic-location- and static-location-sensitive matchmaking of people," the asserted claims should be eligible. *Id.* at 4. Not so. Even if Wireless Discovery was the first to come up with the idea of social networking across mobile devices (it was not), that idea is still abstract, and it is therefore not proper subject matter for patenting. Further, the claims' recitation of well-known devices and components (*i.e.*, computing devices and mobile communications devices with unique device hardware identifiers) performing conventional functions (*i.e.*, authenticating and/or storing, receiving, and transmitting data) to practice this abstract idea does not result in patent-eligible claims. Accordingly, the claims do not cover patent-eligible subject matter, and Appellees respectfully request affirmance of the ruling below.

## STATEMENT OF THE CASE

### I.    The Parties

Wireless Discovery LLC is a non-practicing entity and the purported assignee of the Asserted Patents. It has asserted the Asserted Patents in nine cases since 2020. Wireless Discovery is currently appealing the district court's order dismissing all four suits after invalidating the Asserted Patents under 35 U.S.C. § 101. *See* Appx093.

## II.    The Asserted Patents

The Asserted Patents generally relate to the idea of social networking, that is, discovering and exchanging personal information between members of the same social network. *See, e.g.*, Appx112 at 1:16–22. The oldest of the Asserted Patents—the '875 Patent—states that the invention "relates to discovering members of a social network by associating their personal attributes to the mobile device for the purpose of exchanging information using mobile communication devices." *Id.*

The Asserted Patents sought to provide a "method that allows individuals to use their mobile phones to discover others by personal attributes . . . [and] exchange information over the internet." *Id.* at 2:4–7. For instance, the '875 Patent identifies the problem that "individuals are in need of the ability to exchange customized information such as pictures, social network profiles, emails and phone numbers using their mobile devices." *Id.* at 1:26–37. The '875 Patent insisted that "no form of communication using mobile devices that allows discovery by personal attributes for the purpose of exchanging contact information" existed and that "there [was] no available technology adapted for allowing mobile device users to easily exchange contact and/or related personal information over the internet for the purpose of social interaction by way of mobile devices." *Id.*

But the Asserted Patents' solution amounts to nothing more than using conventional functionality of generic computer components to practice the idea of

3

exchanging information about people based on their location and membership in an organization. For example, the '875 Patent specification describes a social network system that uses "available technology and standard protocols available today," including "a standard cell phone," a "cellular phone network," "existing standard Bluetooth technology," and "Wi-Fi." Appx 112 at 2:31, 2:43-44, 2:50; Appx113 at 4:17-20; Appx117 at 11:45-46. The '267 Patent specification also states that the invention can be implemented on conventional servers:

> In certain embodiments, communication between the member's mobile devices and the server goes through a BTS 403, and communicates according to a packet-based telecommunications protocol such as GPRS, 3G, 4G, LTE or any alternative data technology. In FIG. 1, communication links to/from mobile devices 400 and a network-based server 401 are provided; e.g., internet server, over a BTS 403 using standard communication protocols that provide separate facilities for transmission of digital data, or through wireless connection 404 capable of connecting the user to the internet 405.

Appx156 at 5:67-6:11.

Accordingly, the alleged invention requires only use of generic devices and technologies used for their conventional purposes.

### III.    Procedural History

On April 13, 2022, Wireless Discovery sued Appellees in the District of Delaware, alleging infringement of one or more claims of the '875 Patent. Appx003; Appx012; Appx031; Appx040. Wireless Discovery amended its complaint on July 18, 2022, additionally alleging infringement of the '352 Patent, the '267 Patent, and

the '397 Patent. Appx005; Appx014; Appx033; Appx042. On August 31, 2022, Appellees each filed motions to dismiss for failure to state a claim under Rule 12(b)(6). Appx006; Appx015; Appx034; Appx043.

On February 6, 2023, the district court granted Appellees' motions to dismiss. Appx094. Applying the two-step framework in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the district court determined that all claims of the Asserted Patents are patent ineligible under 35 U.S.C. § 101. Appx087– Appx093.

In reaching this conclusion, the district court found the '267 Patent's Claim 10 representative of all the asserted claims. Appx087. As the district court highlighted, Wireless Discovery described each patent as being directed to nearly verbatim ideas. Appx084 ("*Compare* D.I. 30 at 7 ('The Claims of the [']875 patent are directed to improvements in exchanging information using mobile communications devices, in particular discovering members of a social network by associating their personal attributes to the mobile communications devices for purposes of exchange') *with id.* at 11 ('The Claims of the [']267 patent are directed to improvements in exchanging information using mobile communications devices, in particular discovering personal attributes for purposes of exchange.')").

At *Alice* step one, the district court determined that "claim 10 of the '267 patent is directed to the abstract idea of social networking, such as matching people

by their location." Appx087. The court relied on several decisions holding that similar patent claims were directed to patent ineligible concepts under § 101. Appx088–Appx089 (citing *NetSoc, LLC v. Match Grp., LLC*, 838 F. App'x 544, 548 (Fed. Cir. 2020) (finding claims directed to the "idea of automating the conventional establishment of social networks to allow humans to exchange information and form relationships" abstract); *Jedi Techs., Inc. v. Spark Networks, Inc.*, No. 16-1055-GMS, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017) (finding claims related to "matching people based on criteria such as personality traits or location" abstract); *Walker Digit., LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508 (D. Del. 2014) (finding claims related to "the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters" abstract); *Perry St. Software, Inc. v. Jedi Techs. Inc.*, 548 F. Supp. 3d 418, 433 (S.D.N.Y. 2021) (finding claims directed to "[m]atching based on geographic location" abstract)).

Concluding its step one analysis, the district court stated that "[t]he claims recite purely functional steps related to the abstract idea of exchanging information about people based on their location and membership in an organization." Appx090. It dismissed Wireless Discovery's arguments that the '267 Patent was directed to telecommunications networks. Appx089. Despite Wireless Discovery's efforts to highlight the Asserted Patents' additional "hardware solutions" to allow communications between mobile devices, the district court distinguished the

Asserted Patents from past cases, such as *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) and *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), finding claims were not directed to abstract ideas. Appx089–Appx090. It held that the '267 Patent does not recite any specific rules or algorithms to improve telecommunications networks nor any specific techniques departing from earlier approaches to solve the identified problem. Appx090.

Next, the district court found "no saving inventive concept in claim 10 of the '267 patent" at *Alice* step two. Appx091. The district court reasoned that the '267 Patent only required conventional components, listing examples that the '267 Patent's Claim 10 recites, "such as 'a computing device,' 'network,' and 'mobile communications device.'" *Id.* (quoting Appx162 at cl. 10). The district court also pointed to the '267 Patent's specification, which "states that the invention can be implemented on conventional servers." *Id.* (citing Appx156 at 5:67-6:11). The district court concluded that reciting a generic computer was "not an inventive concept that could 'transform a patent-ineligible abstract idea into a patent-eligible invention.'" *Id.* (quoting *Alice,* 573 U.S. at 223).

The district court dismissed Wireless Discovery's conclusory counterarguments as merely restating the abstract idea or failing "to show how the alleged inventive concepts are more than well-understood, routine, or conventional." Appx092. The district court found Wireless Discovery's "conclusory statements

about the asserted patents' inventive concepts . . . untethered to the claim language of the asserted patents," as evidenced by Wireless Discovery's exclusive citations to the specification, not the claims. *Id.* The district court also disagreed with Wireless Discovery's argument that the Asserted Patents purportedly recite interactions creating a social network that is "manipulated to yield the desired result, allowing connection of devices without requiring hardware compatibility," finding "the computer components recited in the claims are used for their conventional purposes." Appx093 (quoting Appx228 at 40:5-11). Wireless Discovery's bare assertions of an inventive concept could not overcome the fact that "Claim 10 of the '267 patent recites 'establishing a social network on a computer,' which are 'are [sic] quintessential "apply it with a computer" claims.'" *Id.* (quoting *NetSoc*, 838 F. App'x. at 548–49 (citation omitted)).

## SUMMARY OF THE ARGUMENT

The claims of the Asserted Patents are directed to the abstract idea of social networking. This idea includes, as the district court recited, "exchanging information about people based on their location and membership in an organization." Appx088. The claims take that abstract idea and simply apply it using generic technologies used for their conventional purposes. The claims do not contain "something significantly more" than the abstract idea or apply this idea in an inventive or unconventional way. The claims solve no technical problem and achieve no

8

technological improvement. Under longstanding Supreme Court and Federal Circuit jurisprudence, the claims are not patent-eligible. The district court was therefore correct to grant Appellees' motions, and its decision should be affirmed on this appeal.

## ARGUMENT

### I.    Standard of Review

The Federal Circuit applies regional circuit law when reviewing a district court's dismissal of a complaint for failure to state a claim. *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019). The Third Circuit reviews such dismissals *de novo*, accepting as true all well-pleaded facts alleged in the complaint and drawing all reasonable inferences in favor of the non-moving party. *Vallies v. Sky Bank*, 432 F.3d 493, 494 (3d Cir. 2006). Patent eligibility under § 101 is a question of law that may contain underlying issues of fact. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). The Federal Circuit reviews de novo a determination that a claim is directed to patent-ineligible subject matter. *Berkheimer*, 881 F.3d at 1365.

### II.    The Law of Subject Matter Eligibility

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or 11 composition of matter." 35 U.S.C. § 101. In addition, the law recognizes three exceptions to patent

eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are not eligible for patent protection because they are a basic tool of human innovation and a monopoly over such ideas would preempt their use in all fields of endeavor. *See Bilski v. Kappos*, 561 U.S. 593, 612 (2010). The "abstract ideas" category embodies "the longstanding rule that '[a]n idea of itself is not patentable.'" *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874)); *see also Le Roy v. Tatham*, 55 U.S. 156, 175 (1852) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.").

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps: First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. Second, if the claims contain such an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). Thus, transformation of an abstract idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357

(quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72 (2012)).

## III.     The Asserted Patents Are Ineligible Under 35 U.S.C. § 101

The claims of the Asserted Patents are invalid under § 101. First, the claims are directed to the abstract idea of social networking by exchanging information about people based on their location and membership in an organization. Second, the claims are broadly generic and do not contain meaningful limitations that restrict the claims to non-routine and specific applications of the abstract idea. Instead, the claims amount to nothing more than the applicant's idea that it would be more convenient if people could exchange information, such as pictures or contact information, with other people in the same social network and do so using generic computer components for their conventional uses.

## IV.     Claim 10 of the '267 Patent is representative.

The district court first agreed that Claim 10 of the '267 Patent is representative of the other claims across the Asserted Patents because the claims contain the same essential elements and are all directed to the abstract idea of social networking by simply exchanging information about people based on their location and membership in an organization. Appx086.[1]

---

[1] Notably, the district court reached the same eligibility conclusion in *Wireless Discovery LLC v. eHarmony, Inc.*, No. 1:22-cv-00480, Dkt. No. 54 (D. Del. Feb. 6,

Below, Wireless Discovery argued Claim 10 of the '267 Patent is not representative of all claims of the Asserted Patents because (1) claim 10 of the '875 Patent "requires a unique device hardware identifier" not found in the claims of the '267 Patent, and (2) claim 1 of the '267 Patent "requires a computing device that permits discoverable members to have their respective devices turned on or turned off," which is not found in the claims of the '875 or '352 Patents. Appx194. Wireless Discovery also provided an exhibit with side-by-side claim language of the Asserted Patents, arguing that it showed "additional examples of differences in the claims of each of the Asserted Patents." *See id.*; *see also* Appx213–Appx218.

The district court found that, "[e]ven with the attachment of Exhibit I, Wireless Discovery fails to describe *what* additional concrete and technical elements the other claims recite that would require the Court to conduct a separate patentability analysis." Appx086. The district court was "not convinced by Wireless Discovery's arguments that the other claims of the asserted patents have different concrete and technical elements and steps requiring separate patentability analysis." *Id.* The district court correctly found that the "unique hardware identifier and turning

---

2023) (the "eHarmony Order"), treating each of claim 10 of the '875 Patent, claim 1 of the '352 Patent, claim 1 of the '267 Patent, and claim 1 of the '397 Patent as representative. Appx063–Appx068.

on and off functionality are just generic components used for their conventional purpose." *Id.*

On appeal, Wireless Discovery maintains that claim 10 of the '267 Patent is not representative of all claims of the Asserted Patents due to claim elements such as the "unique hardware identifiers" and "ability to discover mobile devices that are turned off." Blue Br. at 28.

Additionally, Wireless Discovery raises for the first time "the use of credentials-based authentication" as support for claim 10's purported non-representativeness. *Id.* Notably, Wireless Discovery chides the district court for failing to mention the term authentication in its order, "except in the court's initial recitation of claim 10." Blue Br. at 20. But, the term "authentication" is also missing from Wireless Discovery's response below and nothing about authentication was raised during the motion hearing. *See generally* Appx189-Appx218; *see also* Appx219-Appx241. Accordingly, Wireless Discovery's arguments related to the claims' minimal recitation of authentication, raised for the first time on appeal, are waived. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) (collecting cases) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal."); *Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d

13

1420, 1426 (Fed. Cir. 1997) ("[A]ppellate courts do not consider a party's new theories, lodged first on appeal.").

Even if this newly raised "authentication" argument was not waived, Wireless Discovery still fails to explain **how** any of these elements are somehow concrete and technical, requiring a separate patentability analysis across separate claims. Indeed, the turning on and off functionality is already recited in representative claim 10 of the '267 Patent. Further, as explained in more detail below, the "unique hardware identifier" is a generic component used for its conventional purpose—authentication.

The unreported district court cases on which Wireless Discovery relies are inapposite here. Each of *TriPlay Inc. v. WhatsApp Inc.*, No. 1:13-cv-01703, D.I. 52 (D. Del. Apr. 28, 2015), *Cronos Techs., LLC v. Expedia Inc.*, No. 1:13-cv-01538, -1541, -1544, D.I. 126 (D. Del. Sept. 8, 2015), and *Pragmatus Telecom LLC v. Interactive Intelligence, Inc.*, No. 1:14-cv-00026, D.I. 84 (D. Del. July 9, 2015), deal with the issue of defendants' failure to articulate why a claim is representative.[2] The adequacy of Appellees' showing of representativeness below was not raised by the

---

[2] Wireless Discovery also cites *Eagle View Techs., Inc. v. Xactware Solutions, Inc.*, No. 1:15-cv-07025, D.I. 104 at 6 (D.N.J. Aug. 2, 2016), which merely provides that the court was "not prepared to declare a small number of claims representative in order to decide Defendants' Motion over the objection of Plaintiffs," a position not taken by the district court below.

district court and is not argued by Wireless Discovery on appeal. If anything, the district court's agreement that claim 10 of the '267 Patent is representative confirms the adequacy of Appellees' showing below.

Because all the claims contain the same essential elements and are all directed to the abstract idea of social networking by simply exchanging information about people based on their location and membership in an organization, claim 10 of the '267 Patent is representative.

### V.    *Alice* Step One: The claims are directed to an abstract idea.

1.  Claim 10 of the '267 Patent is directed to the abstract idea of social networking.

The first step of the *Alice* analysis requires determining whether the claims at issue are directed to an abstract idea. *Alice*, 573 U.S. at 218. Here, the district court correctly found that the claims of the Asserted Patents are directed to the abstract idea of social networking. Appx090. Representative claim 10 of the '267 Patent itself makes plain that the aim of the purported invention is applying ubiquitous wireless technology to exchange information about people based on their location and membership in an organization:

| Claim Language | Claimed Idea |
|---|---|
| 10. A method comprising: | |
| using a computing device to communicate with various mobile and terminal devices to manage introduction and | Linking mobile devices |

| Claim Language | Claimed Idea |
|---|---|
| connection of members belonging to a same network by sharing personal attributes between members; | |
| communicatively linking a first mobile communications device to said computing device; communicatively linking a second mobile communications device to said computing device; | Linking mobile devices |
| using said computing device to provide access to stored user profile information about a first user and a second user; | Accessing membership data |
| using said computing device to store static locations of members and receive information identifying current dynamic locations of all members in said network; | Using user location |
| using said computing device to calculate and determine a proximity of user locations; | Determining user proximity |
| using said computing device to send to said first user upon inquiring of other members in said network of said first user, personal attributes of all other members based on proximity calculations to select members that said first user may wish to connect with, and to send to said second mobile communication device an invitation on behalf of said first user for said second user to accept connecting with said first user; | Exchanging member information and sending invitations to connect |
| using said computing device to communicatively connect said first user and said second user; | Exchanging member information |
| using said computing device to locate information about said second user from a social network storage file of said second user, and transmit this information to said first mobile communications device, wherein the first user and the second user are members of a same social network, and the computing device is to disclose non-anonymous social network attributes including a picture, name, and location of the first user and the second user in a vicinity or within a predetermined distance from one another for the purpose of connecting members of the same social network based in part on proximity calculations between connecting members; | Connecting members for communication |

| Claim Language | Claimed Idea |
|---|---|
| using said computing device to permit discoverable members to have their respective devices turned on or turned off at a time of a search being conducted by said first user; and | Allowing offline connecting |
| using said computing device to permit said discoverable members to have their respective devices unconnected to an internet connection service at said time of the search being conducted by said first user, | Allowing offline connecting |
| wherein any of turned off devices and disconnected devices is discoverable by said computer device as said internet connection service is configured to report said any of turned off devices and disconnected devices as discoverable based on a latest static and dynamic location in proximity to said first user. | Allowing offline connecting |

The district court accurately summarized these elements as evidencing that "claim 10 of the '267 patent is directed to the abstract idea of simply exchanging information about people based on their location and membership in an organization." Appx088 (internal quotations omitted).

The district court also noted that courts, including this Court, have found claims similar to claim 10 of the '267 Patent abstract. *See* Appx089. For example, in *NetSoc, LLC v. Match Grp., LLC*, this Court found that similar patent claims directed to "steps for establishing a social network on a computer" are "an abstract idea 'pertaining to methods of organizing human activity.'" 838 F. App'x 544, 548 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2758, 210 L. Ed. 2d 905 (2021) (internal citations omitted) (finding "the claims of the '107 patent are directed to the abstract idea of automating the conventional establishment of social networks to allow

humans to exchange information and form relationships."). The Court explained that "[t]he claim limitations of 'maintaining' a list of participants, 'presenting' a user with selectable categories, 'receiving' the user's category selection, 'receiving' an inquiry from the user, 'selecting' a participant to receive the user's inquiry, 'sending' the inquiry to the participant, 'receiving' a response to the inquiry from the participant, 'publishing' the response, and 'tracking' feedback of the participants . . . are directed to automating a longstanding, well-known method of organizing human activity." *Id*. The Court further noted that the "claims are quintessential apply it with a computer claims." *Id*. (quotation omitted).

Similarly, courts have found "the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters" to be drawn to an abstract idea and claims directed to "[m]atching based on geographic location" abstract. *See Walker Digit., LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508 (D. Del. 2014) (first quote); *Perry St. Software, Inc. v. Jedi Techs., Inc.*, 548 F. Supp. 3d 418,433 (S.D.N.Y. 2021) (second quote); *see also Jedi Techs., Inc. v. Spark Networks, Inc.*, No. 16-1055-GMS, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017) (finding patents related to the idea of "matching people based on criteria such as personality traits or location" abstract).

Wireless Discovery incorrectly argues that these cases are not "analogous in scope and content" with the asserted claims because "[t]he patents at issue in those

cases did not involve hardware-identifier based registration of users, . . . the additional use of credentials-based authentication[,] . . . [and] the layering of location data on top of those processes to allow finer identification of potential connections to make, even when a user's device is turned off." Blue Br. at 18. According to Wireless Discovery, the district court removed or ignored these concepts when it "distilled" the claims down to the claimed steps. Blue Br. at 19-21. Not so. As discussed below, Wireless Discovery's focus on the claims' recitation of a generic hardware-identifier to perform conventional authentication or the ability to maintain operation while the mobile communications device is turned off does not save the claims from the realm of abstraction.

2.    Claim 10 of the '267 Patent does not improve computer functionality.

At *Alice* step one, this Court has asked "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Here, the claims use only known, generic components operating in a conventional manner without any attempt at a technological improvement.

Claim 10 of the '267 Patent is not directed to any specific means or method for improving technology—it is directed to the abstract idea of social networking. For decades, human beings have been interacting with one another in a social networking context. For example, when a member of a national organization such

as the American Legion moves, he or she may contact the local chapter of the organization to find out whether there are other members nearby that he or she may connect with. The local chapter may then facilitate contact between the relocated member and other members of the organization. Claim 10 of the '267 Patent is directed to the same concept but claims to do so remotely via generic mobile communications devices and a generic computing device. Claim 10 is therefore directed to an abstract idea as it takes an existing human activity and attempts to implement it via generic technologies. *See, e.g.*, *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding the claim at issue "not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity").

Wireless Discovery first contends that district court removed or ignored "technical detail" in the following limitation recited in claim 10 of the '875 Patent: "receiving, via the computing device, a unique device hardware identifier from all communications devices from all users linked in a social network to associate with profiles and authenticate when users sign in to a user account." *See* Blue Br. at 19– 20. According to Wireless Discovery, the "unique device hardware identifier" and "credentials-based authentication process" represent "significant technical improvements." *Id.* The specification, however, belies this contention, disclosing the conventional nature of the "unique device hardware identifier": "In certain

embodiments, unique ad hoc network identifiers comprising a Bluetooth device address, a WiFi address, or main component address such as IMEI which is the international Mobile Station Equipment identify are exchanged between the devices via the server." Appx114 at 5:49–53. Additionally, as the claim recites, this identifier is merely used "to . . . authenticate when users sign in to a user account." Appx120 at cl. 10. Indeed, Wireless Discovery notes the lack of specificity related to this authentication step: "If Wireless Discovery was relying entirely on the authentication process alone, it may be required to show more detail as to its authentication process . . . ." Blue Br. at 20.[3]

The lack of specificity in the claims stands in stark contrast to the claims in *Cosmokey Solutions GMBH & Co. KG v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021), cited by Wireless Discovery. *See* Blue Br. at 20. The claims in *Cosmokey* recited "a ***specific improvement*** to authentication" (15 F.4th at 1098 (emphasis added)), whereas claim 10 of the '875 Patent merely recites the use of a generic "identifier" to "authenticate when users sign in to a user account" (Appx120 at cl. 10). As this Court explained in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021), "[i]n cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to

---

[3] As discussed above, Wireless Discovery's arguments related to the claims' recitation of authentication, raised for the first time on appeal, are waived.

constitute an improvement to computer functionality itself." Like the claims in *Universal Secure Registry*, the asserted claims "recite 'conventional actions in a generic way'—e.g., authenticating a user using conventional tools and generating and transmitting that authentication—without 'improv[ing] any underlying technology.'" *Id.* at 1352 (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)); *see also Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, No. 2022-1468, 2023 WL 193162, at *1 (Fed. Cir. Jan. 17, 2023) (affirming claims held ineligible, which recited a limitation of "authenticating the identify [sic] of the user . . . by requesting authentication data from the user and comparing the authentication data with a master user identification template containing authentication data associated with the user"); *Electronic Communication Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020) (finding claims including limitations for "enabling a first party to input authentication information, storing the authentication information, and providing the authentication information" abstract); *Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016 (Fed. Cir. 2017) (finding claims reciting "receiving" identity data of a client computer, "authenticating" the identity of the data, "authorizing" the client computer, and "permitting access" to the client computer abstract).

Next, Wireless Discovery asserts that district court "remove[d] the array of device-independent communication options for the users' 'mobile communications

devices' available through the gateway or server ('computing device')" purportedly found in the following limitation recited in claim 10 of the '875 Patent: "connecting, via the computing device, the first user and the second user through the computing device for personal communication between first user and the second user, the personal communication comprising one or more SMS, E-mail, chat/instant messaging, multimedia, voice or video." Blue Br. at 21. Despite Wireless Discovery's protestations, the district court properly summarized this limitation in the eHarmony Order as "connecting users for 'personal communication.'" Appx069. Wireless Discovery spills much ink about incompatible devices being able to communicate with each other natively (*see, e.g.*, Blue Br. at 21), but the asserted claims are silent as to device compatibility, and instead, focus solely on the communication between two users via a computing device, a conventional action accomplished with generic computer components. *See, e.g.*, *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (finding abstract the "idea of communication over a network to interact with a device connected to the network").

Unlike the claims in *MAZ Encryption Technologies LLC v. Blackberry Corporation*, No. 13-304-LPS, 2016 WL 5661981, at *6–7 (D. Del. Sept. 29, 2016), which recited a "specific implementation" of encryption to overcome prior art problems of incompatibility, the asserted claims do not recite any specific means or method for improving technology. Instead, the claims are directed to the abstract

idea of social networking using generic computer components (*i.e.*, computing devices and mobile communication devices with unique hardware identifiers) to perform their conventional functions (*i.e.*, authenticating and/or storing, receiving, and transmitting data).

Lastly, in its discussion of *Alice* step one, Wireless Discovery relies on *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) (mostly in the form of reproducing long block quotes from the Court's opinion spanning multiple pages), asserting that *BASCOM* presents a "similar situation." *See* Blue Br. at 22–26. It does not, as *BASCOM* is readily distinguishable.

In *BASCOM*, the patents-in-suit were directed to filtering software. 827 F.3d at 1343. The patents explained that "filtering software was first placed on local computers, such that each local computer had its own tool for filtering websites (or other Internet content) requested by the operator of the computer." *Id*. This setup had logistical problems. *Id*. Thus, "[t]o overcome some of the disadvantage of installing filtering software on each local computer, another prior art system relocated the filter to a local server." *Id.* at 1344. This setup also had problems, however, as "the one-size-fits-all filter on the local server was not ideal." *Id*. The other, final prior art setup was to apply filters on the remote servers of the Internet Service Providers ("ISPs"), but this raised the same "one-size-fits-all" problems as applying the filtering rules on a local server. *Id*.

The *BASCOM* patents sought to solve these problems by applying "filtering schemes" at the ISP's servers. Claim 1 of the '606 Patent was representative:

> 1. A content filtering system for filtering content retrieved from an Internet computer network by individual controlled access network accounts, said filtering system comprising:
>
> a local client computer generating network access requests for said individual controlled access network accounts;
>
> at least one filtering scheme;
>
> a plurality of sets of logical filtering elements; and
>
> a remote ISP server coupled to said client computer and said Internet computer network, said ISP server associating each said network account to at least one filtering scheme and at least one set of filtering elements, said ISP server further receiving said network access requests from said client computer and executing said associated filtering scheme utilizing said associated set of logical filtering elements.

*Id.* at 1345. This claim specifically carves out the use of filtering schemes and applying those schemes to network requests depending on the type of network access request received by the ISP. *See id.* In this way, the patents allegedly solved the problems with the prior art systems because the filtering rules could be applied on a near global scale—*i.e.*, at the ISP—but also be customized to particular sets of users via the application of the filtering schemes. *See id.* at 1344.

Notably, this Court agreed with the district court at step one and held the claims were directed to the abstract idea of "filtering content on the Internet." *Id.* at 1348. And, at step two, the Court also agreed with the district court "that the

limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself." *Id.* at 1349. But the Court disagreed "with the district court's analysis of the ordered combination of limitations." *Id.* It explained that "[t]he inventive concept described and claimed in the '606 patent is the installation of a filtering tool at a ***specific*** location, remote from the end-users, with customizable filtering features ***specific*** to each end user." *Id.* at 1350 (emphasis added). The Court found important the particularity with which the patent described the technological improvement: "Filtering content on the Internet was already a known concept, and ***the patent describes how its particular arrangement of elements is a technical improvement*** over prior art ways of filtering such content." *Id.* (emphasis added). The Court therefore held that, "construed in favor of BASCOM as they must be in this procedural posture, the claims of the '606 patent do not preempt the use of the abstract idea of filtering content on the Internet or on generic computer components performing conventional activities." *Id.* at 1352.

The asserted claims differ materially and substantially from those at issue in *BASCOM*. First, as discussed above, the asserted claims are not directed to any specific means or methods for improving technology—they are directed to the abstract idea of social networking. Second, the asserted claims do not contain the same level of specificity as those in *BASCOM*. The Court in *BASCOM* commented on the ***specifics*** in those claims, how they required a ***particular*** location to contain

*specific* filtering schemes applied to ***individualized*** groups of network access requests. *BASCOM*, 827 F.3d at 1351–52. The asserted claims contain none of that specificity. The district court recognized this lack of specificity below: "Claim 10 of the '267 patent does not recite any specific rules or algorithms to improve telecommunications network, nor does claim 10 of the '267 patent improve specific computer technology or solve specific computer problems." Appx090. Third, unlike in *BASCOM* where an inventive concept was alleged to be found in the ordered combination of the claims "that transforms the abstract idea of filtering content into a particular, practical application of that abstract idea" (827 F.3d at 1352), Claim 10 of the '267 Patent "recites 'establishing a social network on a computer,' which are 'are quintessential "apply it with a computer" claims.'" Appx093 (quoting *NetSoc*, 838 F. App'x at 548-49).

Attempting to tie the asserted claims to those at issue in *BASCOM*, Wireless Discovery characterizes the asserted claims as related to "filtering." *See, e.g.*, Blue Br. at 24. No variation of the term "filter," however, appears in any of the Asserted Patents, much less the asserted claims. *See* Appx095–Appx188. At best, the asserted claims are directed to the exchange of information about people based on their location and membership in an organization. *See* Appx088. This hardly amounts to any type of filtering, much less a specific implementation of filtering as claimed in *BASCOM*.

3.    Claim 10 of the '267 Patent recites the abstract idea functionally.

Claims that recite "functional results" but do not "sufficiently describe how to achieve these results in a non-abstract way" also fail *Alice* step one. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). Here, Claim 10 of the '267 Patent recites only the desired functions for exchanging information about people based on their location and membership in an organization. Claims like these that "do not describe at all how [the] result is achieved" are abstract. *See Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363–64 (Fed. Cir. 2021).

In determining whether a particular claim is directed to an abstract idea, this Court focuses on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. For example, in *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018), this Court asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it.". To answer that question, the Court "look[s] to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media*, 874 F.3d at 1337. The key question is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply

28

directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Here, Claim 10 is directed to an abstract end-result. It lacks any of the specificity that this Court has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*, 880 F.3d 1356, 1361-63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a specific improvement in the capabilities of computing devices"); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a specific means or method for improving technology"). Claim 10 does not require a new or unconventional machine or process for social networking—it requires only a generic mobile communications devices and a generic computing device to perform their conventional functions. "Inquiry therefore must turn to any requirements for how the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). Claim 10 does not describe how the desired result is achieved. It merely recites broad computer functions such as receiving, sending, and storing data. It does not detail how to implement any of these broad functions. The mechanism to implement the idea is impermissibly unbounded in scope. Consequently, the claim's functional nature further supports its ineligibility.

Relying on a means-plus-function case related to indefiniteness under Section 112, Wireless Discovery misinterprets the district court's ruling below, arguing that the district court required an algorithm to support eligibility. *See* Blue Br. at 27-28 (citing *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (requiring disclosure of an algorithm for performing function of a special purpose computer-implemented means-plus-function limitation)). The district court's eligibility analysis did not turn on whether there was a required algorithm. Rather, the district court found claim 10 of the '267 Patent "does not recite any ***specific*** rules or algorithms to improve telecommunications network, nor does claim 10 of the '267 patent improve specific computer technology or solve specific computer problems." Appx090 (emphasis added). In other words, the district court did not require an algorithm to support eligibility, but rather, noted the claims' complete lack of specificity: "Claim 10 of the '267 patent does not describe a ***specific*** technique that departs from earlier approaches to solve a ***specific*** computer problem. The claims recite purely functional steps related to the abstract idea of exchanging information about people based on their location and membership in an organization." *Id.* (emphasis added).

Because the claims recite the abstract idea of social networking, using known components operating in a conventional manner without any attempt at a technological improvement, the claims fail *Alice* step one.

## VI.    *Alice* Step Two: The claims do not contain an inventive concept.

At the second step of the *Alice* analysis, the Court "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 537 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72-73, 79-80). The inventive concept must go beyond "well-understood, routine, [and] conventional activity," *Mayo*, 566 U.S. at 79-80, and it is well established that "the invocation of 'already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional," *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (citation omitted). Here, the claims are broadly generic and do not contain meaningful limitations that would restrict them to a non-routine, specific application of the abstract idea. Further, there is nothing inventive in the way these conventional components are arranged.

The claims of the Asserted Patents fail *Alice*'s second step because they are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using well-known devices (*i.e.*, computing devices and mobile communication devices with unique hardware identifiers) to perform their conventional functions (*i.e.*, authenticating and/or storing, receiving, and transmitting data). As explained

above, the abstract functional descriptions in the claims of the Asserted Patents are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed Alice's step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016), nothing in the asserted claims "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application.".

This Court has repeatedly held that the presence of generic hardware and software like the kind recited in the claims of the Asserted Patents does not make an otherwise abstract idea patent eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context.").

32

Each of the steps recited in the claims is described only at a high level of generality and in a predictable order. For example, representative Claim 10 of the '267 Patent recites (1) "linking" mobile devices to a computer, (2) accessing user profiles and membership, (3) using user location, (4) determining user proximity, (5) exchanging "personal attributes" of users and invitations to connect, (6) connecting members for communication, and (7) allowing offline connecting.

To accomplish these high level functions, the Asserted Patents recite the need for only off-the-shelf, conventional computer technologies. For example, the '875 Patent specification describes a social network system that uses "available technology and standard protocols available today," including "a standard cell phone," a "cellular phone network," "existing standard Bluetooth technology," and "Wi-Fi." Appx 112 at 2:31, 2:43-44, 2:50; Appx113 at 4:17-20; Appx117 at 11:45-46. The '267 Patent specification also states that the invention can be implemented on conventional servers:

> In certain embodiments, communication between the member's mobile devices and the server goes through a BTS 403, and communicates according to a packet-based telecommunications protocol such as GPRS, 3G, 4G, LTE or any alternative data technology. In FIG. 1, communication links to/from mobile devices 400 and a network-based server 401 are provided; e.g., internet server, over a BTS 403 using standard communication protocols that provide separate facilities for transmission of digital data, or through wireless connection 404 capable of connecting the user to the internet 405.

Appx156 at 5:67-6:11.

33

In other words, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp., LLC v. Alsom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). No limitations in the claims of the Asserted Patents rise to the level of an inventive concept under step two of the *Alice* test. *See, e.g.*, *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113, 212 L. Ed. 2d 10 (2022) ("[T]he claimed hardware configuration itself is not an advance and does not itself produce the asserted advance of enhancement . . . which . . . is an abstract idea. The claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement—the generic hardware limitations of claim 1 merely serve as a conduit for the abstract idea.") (quotations omitted). Indeed, at the motion hearing, Wireless Discovery admitted that the social networking applications such as Myspace, Outlook, and Facebook were known before the Asserted Patents:

> THE COURT: . . . With respect to – you acknowledge that the provisional patent application did refer to Myspace, Outlook, and Facebook?
>
> MR. RAMEY: . . . Yes, we admit those existed. Those existed on a terminal, on a desktop. It wasn't a wireless devices, so it wasn't on wireless devices.

Appx231 at 51:18-52:3. If anything, Wireless Discovery concedes that all it purportedly invented was the idea of taking known social networking applications and applying them on generic mobile devices.

34

The remaining claims of the '267 Patent, as well as the claims of the remaining Asserted Patents, include similar limitations regarding the abstract idea and lack the specificity necessary to claim patent-eligible subject matter. These claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not cover any unconventional computer components or techniques. Accordingly, they suffer from the same flaws as representative Claim 10. All of the Asserted Patents' claims simply apply the abstract concept of social networking by exchanging information about people based on their location and membership in an organization, and this Court has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

Wireless Discovery argues that the district court made two "erroneous assumptions" in its step two analysis. First, Wireless Discovery takes issue with the district court's criticism of Wireless Discovery "only cit[ing] to the specification in its brief, not to the claims, to support its bare assertions that the asserted patents recite an inventive concept." Blue Br. at 33 (quoting Appx092). The district court was not wrong. As the district court correctly found, "Wireless Discovery's analysis is flawed because its conclusory statements about the asserted patents' inventive concepts are ***untethered to the claim language*** of the asserted patents." Appx092 (emphasis added). While Wireless Discovery notes in its Blue Brief various aspects

35

of the claims it believes provide "improvements to the relevant technology," it is incorrect. *See* Blue Br. at 34. As discussed above, the recited "unique hardware identifier" were well-known and generic, the recited step of "authentication" is conventional, and Wireless Discovery's assertion of "user filtering preferences" are found nowhere in the claims or the remainder of the Asserted Patents.

Next, Wireless Discovery takes issue with the district court's finding that the claims "quintessential 'apply it with a computer' claims," that recite computer components used for their conventional purposes. Blue Br. at 34. Again, Wireless Discovery relies on well-known, generic "unique hardware identifiers," conventional "authentication," and filtering. *See id.* But as discussed above, these aspects of the claims do not amount to a technological improvement. Indeed, Wireless Discovery has not, and cannot, demonstrate a combination or arrangement of the Asserted Patents' claim elements that amount to a technological improvement.

This Court addressed a similar issue in *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017), when the patentee argued that the combination of its elements resulted in an inventive concept.. The Court held that "the claims do not recite particular features to yield" the advantages proffered by the purported combination. *Id.* "[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more." *Id.* The same is true here.

Because the claims are broadly generic, do not contain meaningful limitations that would restrict them to a non-routine, specific application of the abstract idea, and contain nothing inventive in the way the conventional components are arranged, the claims fail *Alice* step two.

### VII. Nothing precluded the district court from assessing eligibility of the Asserted Patents at the Rule 12(b)(6) stage.

Patent eligibility has been resolved on motions to dismiss in many cases. *See Berkheimer*, 881 F.3d at 1368; *see also, e.g.*, *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (affirming district court's grant of motion to dismiss because claims were ineligible under § 101); *Simio, LLC v. Flexsim Software Prods.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020) (same); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1380 (Fed. Cir. 2016) (same); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (same); *Content Extraction*, 776 F.3d at 1345 (same). There is no reason the district court should have declined to address this issue on the pleadings.

This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, this Court noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d at 1369. The Court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-

understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the Court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370. Here, in contrast, there is no factual dispute whether the claims of the Asserted Patents include an inventive concept.

As this Court has held, resolution of patent eligibility at the Rule 12(b)(6) stage is appropriate when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125. That is the case here. The specification demonstrates that the claims do no more than implement preexisting functionality using generic computer components. "In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." *Aatrix*, 890 F.3d at 1356 (denying rehearing en banc).

## VIII.    Conclusion and Relief Sought

For these reasons, the Court should affirm the district court's decision that the claims of the Asserted Patents are invalid under 35 U.S.C. § 101.

Dated:  August 23, 2023

Respectfully submitted,

By: /s/ *Lance Wyatt*

Lance Wyatt
Neil J. McNabnay
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
wyatt@fr.com
mcnabnay@fr.com

*Attorneys for Defendants-Appellees,*
*Coffee Meets Bagel, Inc., Down App, Inc.,*
*Grindr, Inc., and Hily Corp.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This Brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this Brief contains 9071 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionately spaced typeface using Microsoft Office Word in Times New Roman font, size 14.

*/s/ Lance Wyatt*
Lance Wyatt

## CERTIFICATE OF SERVICE AND FILING

I certify that on August 23, 2023, I electronically filed the foregoing Response Brief of Appellees using the Court's CM/ECF filing system. Counsel for Appellant was electronically served by and through the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).


Dated:  August 23, 2023                    */s/ Lance Wyatt*
                                           Lance Wyatt